DEAN VAN LINES, INC.

v.

The UNITED STATES.

No. 468-60.

United States Court of Claims.

Dec. 5, 1962.

Rehearing Denied Feb. 6, 1963.

Francis Forti, Washington, D. C., for plaintiff.

John Charles Ranney, Washington, D. C., with whom was Joseph D. Guilfoyle, Acting Asst. Atty. Gen., for defendant.

JONES, Chief Judge.

Plaintiff seeks to recover the sum of $254.66 which it claims as additional transportation charges on a shipment dated June 14, 1958, on a Government bill of lading of household goods from Washington, D. C., to Hawaii. The original suit covered thirteen shipments: one made during 1958 and the other twelve made in 1959. For reasons which will appear hereafter the claim is now limited to the claim as to shipment made in 1958.

The shipment was made through the port of Los Angeles. It was covered by a bill of lading and the transportation charges were computed and paid on the basis of shipment via the port of Los Angeles. The plaintiff claims that this was the proper basis for payment of the particular shipment over the plaintiff's lines.

The defendant contends that the rate should have been calculated from point of shipment through Norfolk, Virginia, since that was the nearest port of shipment from the point of origin. The defendant deducted the difference in the rates from the amount due on subsequent shipments. Hence this suit.

There are a number of statutes, regulations, and exceptions which are discussed in the briefs of both parties and several exhibits are in the record. From a reading of this considerable accumulation of documents and material there emerges a single issue and some very clear relevant facts.

It is clear that before being permitted to share in the business of transporting household goods to or from overseas points for the account of the United

States, the carriers were required by the Government to file with military installations with which they desired to do business service tenders which were to describe the services that the carrier was willing to perform, the points from which the particular carrier would accept shipments, and also to name the ports of export and entry through which overseas shipments would be handled, and to meet other conditions not relevant here.

A large number of van lines filed such tenders indicating the military installations and points which they desired to serve and meeting the other conditions required by the Government.

Sometime before the shipment involved here the plaintiff filed such a service tender which met the requirements and which designated the ports for Hawaiian export as Los Angeles, Oakland, and San Francisco, California, and Seattle, Washington. It did not name Norfolk, Virginia.

The Government also required the filing of a military rate tender. The Movers and Warehouse Association of America, through its executive secretary, filed a rate tender. Some 14 different van carriers, including the plaintiff, were named in these tenders. These rates which were filed jointly by the Association for its members designated the rates that would apply when shipped through the various ports. The rate schedule from the point of origin of the particular shipment would have been $254.66 less if the shipment had been made through Norfolk, Virginia, than when shipped through the West Coast ports. It was necessary for the van line to make arrangements with shipping concerns operating from the point of embarkation. The plaintiff had such arrangements for shipment through West Coast ports but had no such arrangements through Norfolk, Virginia.[1]

The defendant contends that the rate schedules submitted by the Association governed the transportation charges. It asserts that plaintiff had the right to ship through any port which it desired, but that the rate would be governed as if made by shipment through the nearest port from which the shipment was made. The plaintiff contends that the service tender and the rate tender must be construed together; that each of the van lines designated the military point from which it was willing to do business and had designated the port through which overseas shipment would be made by the particular line to the Hawaiian Islands; that the service tenders were on file at the time the rates were specified; that this was fully known to the defendant at the time the plaintiff accepted the particular household goods for shipment.

Supplement No. 3 to the Military Rate Tender (I.C.C. No. 5, Section IV. (Defendant's exhibit B)) contains the following language:

"Applicable between points within the United States or Canada and the nearest point of embarkation and/or debarkation of Los Angeles, Oakland and San Francisco, California, Norfolk, Virginia, or Seattle, Washington."

If this language stood alone we would have no difficulty. But there are other vital parts of the record which must be considered.

The rate tender does not express the entire agreement of the parties. It does not state the services intended to be covered by said rates. The rate tender should be read in the light of the provisions of the service tender to ascertain what services would be required. If the service tender was not to be a part of the agreement there would seem to be very little occasion for requiring a service tender. These service tenders were filed at each of the military installations from

---

1. The plaintiff had later made arrangements for joint water transportation to Hawaii through Norfolk, Virginia, and on November 4, 1958, added Norfolk as one of the ports of shipment to Hawaiian destinations. The shipment in issue had been made June 14, 1958. Since all of the 1959 shipments were made after this amended designation they have been eliminated from plaintiff's claim.

which shipment would be made and from which the van lines were willing to accept shipments to Hawaiian destination. The bills of lading were no doubt made out at the points of shipment where the service tenders were available. The plaintiff accepted this shipment after having designated the ports of Los Angeles, San Francisco, and Seattle as the ports of embarkation for shipments to Hawaii. The defendant had access to full information as to the points from which and the ports through which plaintiff would accept shipment. Both of these tenders became a part of the shipping contract.

The defendant's motion for summary judgment is denied. The plaintiff's similar motion is granted. Plaintiff is entitled to recover the sum of $254.66, and judgment is entered for plaintiff in that amount.

DAVIS, DURFEE, LARAMORE and WHITAKER, Judges, concur.